IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

No. 25-137 T
(Judge David A. Tapp)

KEYSIGHT TECHNOLOGIES, INC. & SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

_____

**UNITED STATES' REPLY IN SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT**

_____

The United States submits this reply in support of its Cross-Motion for Summary
Judgment (Dkt. No. 40). For the reasons set forth in that motion and discussed further herein,
Treasury Regulation § 1.951A-2(c)(5) (the "Regulation") is a valid exercise of authority
delegated by Congress to the Treasury Secretary (the "Secretary"). Accordingly, the United
States respectfully requests that the Court enter summary judgment in favor of the United
States.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.    Congress delegated authority to Treasury to make rules as to what deductions are "properly allocable." ................................................................................................... 1

          A.    Section 951A(c)(2)(A)(ii) delegates authority. ................................................ 2

          B.    Section 7805(a) delegates authority. ............................................................... 5

    II.    The Regulation is within the authority delegated to the Secretary under Section 951A and Section 7805. ............................................................................................... 8

          A.    Congress has never used "properly allocable" to mandate only the factual relationship test. That phrase has a broader meaning. .................................... 8

          B.    The Regulation is "similar to the rules of section 954(b)(5)." ...................... 12

               1.    Congress delegated authority to do more than "cut and paste" existing rules into Section 954(b)(5). ................................................................... 12

               2.    Allocation of related party interest is not governed by the factual relationship test. ....................................................................................... 13

               3.    Proper allocation of expenses associated with tax-exempt income and assets do not follow the factual relationship test. ...................................... 14

               4.    The Regulation operates in a manner similar to the related-party interest and tax-exempt income rules of Section 954(b)(5). ............................................ 15

    III.    The Regulation is procedurally valid. ............................................................... 17

          A.    The Regulation is not arbitrary and capricious. ............................................ 17

          B.    The Regulation is a logical outgrowth of the Proposed Rule. ....................... 19

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Aircraft Indus., Inc.-Birmingham v. United States*,
    586 F.3d 1372 (Fed. Cir. 2009)........................................................................................18

*Allen v. United States*,
    173 F.3d 533 (4th Cir. 1999) ...........................................................................................11

*Balestra v. United States*
    803 F.3d 1363 (Fed. Cir. 2015)........................................................................................18

*Bartenwerfer v. Buckley*,
    598 U.S. 69 (2023)..............................................................................................................3

*Cammarano v. United States*,
    358 U.S. 498 (1959)..........................................................................................................11

*CFPB v. MoneyLion Techs. Inc.*,
    799 F. Supp. 3d 152 (S.D.N.Y. 2025)................................................................................2

*Fischer v. United States*,
    603 U.S. 480 (2024)............................................................................................................8

*Int'l Paper Co. v. United States*,
    33 Fed. Cl. 384 (1995) .....................................................................................................10

*Jam v. Int'l Fin. Corp.*,
    586 U.S. 199 (2019)....................................................................................................12, 13

*Koyo Seiko Co. v. United States*,
    95 F.3d 1094 (Fed. Cir. 1996)............................................................................................2

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)................................................................................................. *passim*

*Lorillard v. Pons*,
    434 U.S. 575 (1978)..........................................................................................................11

*Mayo Found. for Med. Educ. & Rsch. v. United States*,
    562 U.S. 44 (2011).........................................................................................................6, 7

*Mem'l Hermann Accountable Care Org. v. Comm'r*,
    120 F.4th 215 (5th Cir. 2024) ............................................................................................6

iii

*Mid Continent Nail Corp. v. United States*,
   846 F.3d 1364 (Fed. Cir. 2017)......................................................................................19, 20

*Miller v. United States*,
   65 F.3d 687 (8th Cir. 1995) ....................................................................................................11

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins.*
   *Co.*,
   463 U.S. 29 (1983)..................................................................................................................17

*Nat'l Muffler Dealers Assoc. v. United States*,
   440 U.S. 472 (1979)..................................................................................................................6

*OMJ Pharms., Inc. v. United States*,
   753 F.3d 333 (1st Cir. 2014)..................................................................................................4, 5

*Redlark v. Comm'r*,
   141 F.3d 936 (9th Cir. 1998) .......................................................................................10, 11, 16

*Relentless Inc. v. U.S. Dep't of Comm.*,
   No. 20-108 WES, 2025 WL 1939025 (D.R.I. July 15, 2025), *appeal docketed*,
   No. 25-1845 (1st Cir.)................................................................................................................7

*Robinson v. Comm'r*,
   119 T.C. 44 (2002)..................................................................................................................11

*Rowan Cos. v. United States*,
   452 U.S. 247 (1981)..................................................................................................................6

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) (*Chenery I*) ...............................................................................................2

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947) (*Chenery II*)............................................................................................2

*Varian Medical Sys., Inc. v. Comm'r*,
   163 T.C. 76 (2024)....................................................................................................................6

*Veis v. United States*,
   No. CV–87–099–GF, 1988 WL 149354 (D. Mont. Sept. 2, 1988), *aff'd* 891
   F.2d 297 (9th Cir. 1989) ...........................................................................................................4

*Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*,
   818 F.3d 1336 (Fed. Cir. 2016)...............................................................................................19

**Statutes**

5 U.S.C. § 553(b)(3) ....................................................................................................................19

22 U.S.C. § 288a(b) ...................................................................................................13

I.R.C. § 864(e)(3)............................................................................................9, 14, 15

I.R.C. § 951A ....................................................................................................... *passim*

I.R.C. § 951A(c)(2)(A) ...........................................................................................3, 16

I.R.C. § 951A(c)(2)(A)(ii) .................................................................................... *passim*

I.R.C. § 954 ............................................................................................................4

I.R.C. § 7805(a) .................................................................................................. *passim*

Pub. L. No. 119-21, §§ 70323(a), 70354(b), 139 Stat. 72, 205, 211 (2025)..................................11

Tax Reform Act of 1986, § 1201(c), Pub. L. No. 99-514, 100 Stat. 2085, 2525
    (codified at I.R.C. § 954(b)(5)) ...................................................................... *passim*

**Other Authorities**

Guidance Related to Section 951A (Global Intangible Low-Taxed Income) and Certain
    Guidance Related to Foreign Tax Credits, 84 Fed. Reg. 29288 (June 21, 2019) ....3, 16, 17, 18

H.R. Rep. No. 99-426 (1985)....................................................................................4, 14

H.R. Rep. No. 99-841 (1986)..............................................................................4, 13, 14

**Regulations**

Treas. Reg. § 1.861-8 .......................................................................................3, 7, 10, 16

Treas. Reg. § 1.861-8(a)(2)...................................................................................3, 12

Treas. Reg. § 1.861-8(d)(2)(ii)(A) ...............................................................................15

Treas. Reg. § 1.861-8T ...............................................................................................3

Treas. Reg. § 1.861-9T(a) ...........................................................................................4

Treas Reg. § 1.951A-2(c)(3)(i) ...................................................................................15

Treas. Reg. § 1.951A-2(c)(5)(i), (c)(5)(iii)(B)..................................................................16

Treas. Reg. §§ 1.951A-2(c)(5), 1.951A–3(h)(2)(ii)...........................................................16

Treas. Reg. § 1.954-1(c) ...........................................................................................15

Treas. Reg. § 1.954-1(c)(1)(i)....................................................................................12

Treas. Reg. § 1.954-1(c)(1)(i)(B) (2017) .........................................................................3

**INTRODUCTION**

U.S. tax law has long provided the Secretary with authority to determine when it is *proper* for deductions of a controlled foreign corporation ("CFC") to be allocated to particular income of that CFC. Congress recognized that principle in Section 951A(c)(2)(A)(ii) when it delegated authority to the Secretary to determine what deductions are "properly allocable" to gross tested income "under rules similar to the rules of section 954(b)(5)." Rather than writing explicit expense allocation rules—or a singular test, such as the factual relationship test that Keysight presses—Congress delegated authority to fill up the details of what deductions are properly allocable, so long as they are *similar* to the rules of Section 954(b)(5).

The Secretary properly exercised the authority delegated under Section 951A(c)(2)(A)(ii)—and backstopped by the broad delegation of authority under Section 7805(a)—to write the Regulation. And the Regulation is within the delegated authority because it is similar to the rules of Section 954(b)(5). Contrary to Keysight's arguments, Section 954(b)(5) has never required *just* the factual relationship test. Instead, "the rules of section 954(b)(5)" reflect broader principles, including Congress's understanding that proper allocation of deductions is not always based solely on the factual relationship test.

Finally, Keysight continues to press procedural objections to the Regulation; those objections continue to be misguided. The Regulation was the product of reasoned decision making, is a logical outgrowth of the proposed regulation, and is not arbitrary and capricious.

**ARGUMENT**

I.    **Congress delegated authority to Treasury to make rules as to what deductions are "properly allocable."**

Keysight disputes that Section 951A(c)(2)(A)(ii), backstopped by Section 7805, delegates rulemaking authority to the Secretary. As the Supreme Court explained in *Loper Bright*, that is a

1

pure legal question, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024), and "courts decide legal questions by applying their own judgment," *id.* at 392. And the better reading of those statutes is that they give the Secretary authority to issue regulations.

### A.    Section 951A(c)(2)(A)(ii) delegates authority.

At the outset, Keysight argues that Treasury did not rely on Section 951A(c)(2)(A)(ii) in promulgating the Regulation and therefore cannot rely on it here. Dkt. No. 42 at 22–23 (citing *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). This argument is legally and factually wrong.

Keysight's argument rests on the *Chenery* doctrine, but that doctrine has no bearing on purely legal questions. *See SEC v. Chenery Corp.*, 318 U.S. 80 (1943) (*Chenery I*); *SEC v. Chenery Corp.*, 332 U.S. 194 (1947) (*Chenery II*). *Chenery I* explained that the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." 318 U.S. at 87. That case concerned justification of an agency's exercise of administrative discretion. *See id.* at 94–95. When the case returned to the Supreme Court a few years later, the Court refused to overrule the agency's decision precisely because it was a well-founded exercise of discretion. *See* 332 U.S. at 209. But as the Supreme Court has made clear, whether Section 951A(c)(2)(A)(ii) delegates authority is a matter of statutory interpretation, which is done by the Court. *See Loper Bright*, 603 U.S. at 394–95. On pure questions of law, there is no deference to the agency and thus no reason to restrict review to the administrative record. The *Chenery* doctrine is inapplicable where "the sole issue is one of statutory construction." *See Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1101 (Fed. Cir. 1996). As a consequence of *Loper Bright*, "[t]he *Chenery* doctrine . . . does not limit what interpretive arguments the Court may consider in determining the meaning of the [statute] and assessing whether the [rule being challenged] is consistent with that meaning." *CFPB v. MoneyLion Techs. Inc.*, 799 F. Supp. 3d 152, 170 n.9 (S.D.N.Y. 2025).

2

Keysight's factual assertion is equally mistaken. The Secretary provided adequate notice that Section 951A(c)(2)(A)(ii), along with Section 7805(a), delegated rulemaking authority. After noting the broad authority conferred by Section 7805(a), the Secretary cited Section 951A(c)(2)(A) as a "source of . . . authority" for the regulations. Guidance Related to Section 951A, 84 Fed. Reg. 29288, 29299 (June 21, 2019) (quoting I.R.C. § 951A(c)(2)(A)(ii)). The Secretary then explained that the Regulation is an exercise of rulemaking authority "under sections 951A and 7805." *Id.* at 29300.

In short, it is the Court's role to "exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright*, 603 U.S. at 394. And Section 951A, properly read, confers on the Secretary authority to issue regulations that determine what deductions are "properly allocable" to what income. "We start where we always do: with the text of the statute." *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023) (quoting *Van Buren v. United States*, 593 U.S. 374, 381 (2021)) (internal quotation marks and brackets omitted). Congress directed that tested income should be reduced by "the deductions (including taxes) *properly allocable* to such gross income under *rules similar to* the *rules of section 954(b)(5)* (or to which such deductions would be allocable if there were such gross income)." I.R.C. § 951A(c)(2)(A)(ii) (emphasis added).

The Section 954(b)(5) rules generally allocate expenses based "on the principles of sections 861, 864, and 904(c)." Treas. Reg. § 1.954-1(c)(1)(i)(B) (2017); *see also* Treas. Reg. §§ 1.861-8, 1.861-8T. Those rules generally follow a factual relationship test. Treas. Reg. § 1.861-8(a)(2); *see also* Dkt. No. 40 at 36–39. But there are exceptions. For example, Congress modified Section 954(b)(5) in 1986 to depart from the generally applicable factual relationship test for interest expense paid to a United States shareholder of a CFC or a related CFC ("related-party interest expense"). Tax Reform Act of 1986, § 1201(c), Pub. L. No. 99-514, 100 Stat. 2085,

2525 (codified at I.R.C. § 954(b)(5)); H.R. Rep. No. 99-841, vol. II, at 582 (1986) (Conf. Rep.). Under the general factual relationship rules of Sections 954(b)(5) and 861, interest expense is allocated across all of a CFC's various categories of income. That rule rests on the premise that money is fungible, so borrowed money bears a factual relationship to all activities and property. *See* Treas. Reg. § 1.861-9T(a). In the 1986 amendments, Congress made the *proper* allocation method one where the related-party interest expense was first allocated to a passive category of Subpart F income. *See* I.R.C. § 954(b)(5) (second and third sentences); H.R. Rep. No. 99-426 at 374 (Dec. 7, 1985); *see also* Dkt. No. 40 at 36–39.

Moreover, Keysight's interpretation—that the Secretary has express authority to proscribe rules under Section 954(b)(5), but no authority to define what deductions are properly allocable to tested income under Section 951A—is illogical. Fundamentally, Congress directed that the rules of Sections 954 and 951A should be similar. That can only happen if the Secretary has the authority to write the rules for both. The Secretary has authority to issue and modify rules under Section 954(b)(5), so the Secretary must also have the authority to ensure that the rules of Section 951A are similar.

Keysight denies that authority by again trying to render "similar to" superfluous. It argues that "rules similar to [other rules]" is a self-executing phrase. Dkt. No. 42 at 23–24. That argument relies on two cases, *OMJ Pharmaceuticals, Inc. v. United States*, 753 F.3d 333 (1st Cir. 2014), and *Veis v. United States*, No. CV–87–099–GF, 1988 WL 149354 (D. Mont. Sept. 2, 1988), *aff'd* 891 F.2d 297 (9th Cir. 1989), but neither support it. In both cases, the relevant statutory language provided for "rules similar to the rules" of another section, and in both cases, the court noted that the IRS did not write any such rules. *See OMJ*, 753 F.3d at 336; *Veis*, 1988 WL 149354, at *2. In neither case did the court find or even suggest that the IRS did not have

4

*authority* to write such rules. If anything, these cases suggest that the statutory language *did* provide authority, but that the IRS did not exercise it. Tellingly, in *OMJ*, the court noted that the dispute arose "because neither Congress nor the IRS wrote any rules." 753 F.3d at 336. Thus, Keysight's suggestion that the statutory phrase "[r]ules similar to the rules" of another section must be interpreted simply to import the rules of the cross-referenced section finds no support in *OMJ*'s holding. *See id.*

### B.    Section 7805(a) delegates authority.

In addition to Section 951A(c)(2)(A)(ii), the Secretary had authority to issue the Regulation under Section 7805(a). In attempting to cabin the scope of authority delegated to the Secretary under the latter statute, Keysight erroneously suggests that the United States asks the Court to apply *Chevron* deference. Keysight's arguments conflate the question whether Congress delegated rulemaking authority to the Secretary with the question whether a regulation issued pursuant to that delegation is valid. No one disputes that *Loper Bright* requires the Court to answer legal questions without deferring to the agency. But *Loper Bright* did not disturb the numerous decisions that recognize Section 7805(a) as a valid delegation of rulemaking authority.

Congress did not limit section 7805(a)'s delegation to strictly procedural regulations. And Keysight cites no authority to the contrary. Instead, Section 7805(a) contains a broad delegation of authority, including "all rules and regulations as may be necessary *by reason of any alteration of law in relation to internal revenue*." I.R.C. § 7805(a) (emphasis added). Keysight ignores this portion of the statute. But the TCJA was one of the largest alterations of international tax law in the nation's history, and the authority delegated by Section 7805(a) is of great utility when the Secretary issues a regulation that is prompted by a change in law. The Regulation achieves that harmony by providing rules "similar to" rules in Section 954(b)(5) to properly allocate deductions.

5

In arguing that Section 7805(a) is *not* a grant of rulemaking authority, contrary to the statute's plain language, Keysight misstates the holding of two cases. *Memorial Hermann Accountable Care Organization v. Commissioner*, 120 F.4th 215 (5th Cir. 2024), does not even mention Section 7805; it merely stated that the court did not have to defer to Treasury's statutory interpretation—an issue that goes to whether Treasury's regulation was within its delegated authority, not whether it had rulemaking authority at all. *See id.* at 219. Similarly, in *Varian Medical Systems, Inc. v. Commissioner*, 163 T.C. 76 (2024), the Tax Court held that the regulation fell "outside the boundaries" of any delegated authority under Section 7805(a), not that Section 7805 did not confer authority. *Id.* at 107. Keysight also claims its procedural-regulations-only approach is "consistent with courts' approach to tax regulations before *Chevron*." Dkt. No. 42 at 30 n.10. Citing to *National Muffler Dealers Association v. United States*, 440 U.S. 472 (1979), and *Rowan Cos. v. United States*, 452 U.S. 247, 253 (1981), Keysight argues that regulations issued under Section 7805(a) were owed less deference. Dkt. No. 42 at 30 n.10. But in 2011, the Supreme Court specifically rejected this argument—and in so doing suggested that Section 7805(a) *does* confer rulemaking authority. *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 57–58 (2011).

In *Mayo*, the Supreme Court held that "*Chevron* and *Mead,* rather than *National Muffler* and *Rowan,* provide the appropriate framework for evaluating the full-time employee rule," which was a *substantive* rule promulgated under Section 7805(a). *Id.* at 57. The "ultimate question" then became "whether Congress would have intended, and expected, courts to treat the regulation as within, or outside, its delegation to the agency of 'gap-filling' authority." *Id.* at 58. Although decided under the *Chevron* standard, *Mayo* observed that Section 7805(a) was an "express congressional authorizatio[n] to engage in the process of rulemaking." *Id.* at 57

6

(internal quotation marks omitted). And, as the Court observed, the administrative review of tax regulations should be treated the same as the review of any other regulations. *Id.* at 55.

Notably, Keysight acknowledges that "*Loper Bright* itself involved a general grant of rulemaking authority similar to Section 7805(a)." Dkt. No. 42 at 30. It claims that if the United States was correct, "*Loper Bright* itself would have come out the other way." Dkt. No. 42 at 30. But Keysight completely misconstrues *Loper Bright*, which simply overruled *Chevron* and remanded the case for further proceedings. 603 U.S. at 412–13.[1] On remand, the District Court for the District of Rhode Island upheld the regulation at issue. *See Relentless Inc. v. U.S. Dep't of Comm.*, No. 20-108 WES, 2025 WL 1939025, at *6 (D.R.I. July 15, 2025), *appeal docketed*, No. 25-1845 (1st Cir.). And, in doing so, the district court relied, in part, on "a residual and broad delegation" that authorizes the National Marine Fisheries Service "to 'prescribe such other measures, requirements, or conditions and restrictions' that it deems 'necessary and appropriate for the conservation and management of the fishery.'" *Id.* at *5. That court's recognition of rulemaking authority is apt to the delegation of authority in Section 7805(a).

Finally, confronted with the fact that Section 7805(a) was the delegation of authority that authorized Treasury Regulation § 1.861-8, a substantive regulation on which it relies, Keysight tacitly acknowledges the real issue (despite its earlier conflation of rulemaking authority and validity of the rule): "[H]aving the authority to write regulations does not mean that the regulations are valid." Dkt. No. 42 at 31–32. The United States agrees. As discussed below, the Regulation is valid because it is within the scope of authority delegated to the Secretary. But

---

[1] Keysight claims: "The Supreme Court held that this language did not authorize the agency to impose a requirement not found in the statute and did not suggest that this language was one of the special type of delegations the Court had identified." Dkt. No. 42 at 31 (citing *Loper Bright*, 603 U.S. at 400–04). But pages 400 through 404 of *Loper Bright* discuss why *Chevron* should be overruled and do not discuss the facts of the case at all.

Keysight's admission that Section 7805(a) authorized a substantive regulation it relied upon should be fatal to its argument that Section 7805(a) cannot authorize the substantive regulation here.

**II.    The Regulation is within the authority delegated to the Secretary under Section 951A and Section 7805.**

If an agency has authority to regulate, the Court's job is "fixing the boundaries of the delegated authority," which it does by "independently interpret[ing] the statute and effectuat[ing] the will of Congress." *Loper Bright*, 603 U.S. at 395. In doing so, the Court "must give effect, if possible, to every clause and word of the statute," considering both "the specific context" and "the broader context of the statute as a whole." *Fischer v. United States*, 603 U.S. 480, 486 (2024) (citation modified).

Keysight attempts to minimize the Secretary's rulemaking authority by clipping narrow parts of the statute and asserting that they mean *only* the factual relationship test. Originally, it argued that "properly allocable" meant "factually related." Dkt. No. 34 at 31–33 (arguing that the term "properly allocable" has a "settled meaning" of factually related). Now, Keysight argues that "the rules of Section 954(b)(5)" must mean only the factual relationship test. Dkt. No. 42 at 13 (claiming that "everyone understands that the rules of Section 954(b)(5) mean the factual relationship test"). The problem with Keysight's shifting arguments is that no portion of the statute, either individually or collectively, mandates the use of *only* the factual relationship test.

**A.    Congress has never used "properly allocable" to mandate only the factual relationship test. That phrase has a broader meaning.**

Keysight says that, in the context of Section 951A(c)(2)(A)(ii), the "rules of section 954(b)(5)" can mean one thing and one thing only: the factual relationship test. Put differently, Keysight believes that allocating deductions on any basis other than their factual relationship to income is not allowed under Section 954(b)(5), and, by extension, Section 951A(c)(2)(A)(ii).

8

The Regulation is invalid, Keysight says, because it allocates deductions on a different basis than their factual relationship to income. But Keysight is wrong.

First, Keysight tries to change the words "properly allocable" into "factually related" by arguing from Treasury's supposed understanding of the words. *See, e.g.*, Dkt. No. 42 at 12 (claiming that the "Treasury Department always has understood that Section 951A(c)(2)(A)(ii) requires the factual relationship test"). But none of the regulations issued under Sections 951A(c)(2)(A)(ii), 954(b)(5), and 861—some of the "rules under section 954(b)(5)"—define the term "properly allocable" or otherwise suggest that the Secretary interpreted that term to require the factual relationship test in every case.

The Secretary's understanding aside, the Court's job is to determine what *Congress* meant when it used the words "properly allocable" and "similar to the rules of section 954(b)(5)" in order to ensure the Regulation is within that boundary. *See Loper Bright*, 603 U.S. at 395. And all indications are that Congress used those words not just to incorporate a portion of the Section 954(b)(5) rules, but the rules of Section 954(b)(5) overall.

First, Congress has rejected the notion that "properly allocable" is limited to application of the factual relationship test. *See* Dkt. No. 40 at 36–39 (explaining congressional modifications to the Section 954(b)(5) allocation rules). Congress amended Sections 954(b)(5) and 864(e)(3) in 1986 to require that certain expenses be allocated in a manner different than the factual relationship test would dictate to ensure a *proper* allocation. While Keysight brushes aside these examples as enacted by Congress, Dkt. No. 42 at 16, the point remains that Congress has specifically recognized that application of the factual relationship test can lead to an *improper* allocation. The statutory exceptions to the factual relationship test are part of "the rules of section 954(b)(5)" and represent principles the Secretary was expected to look to when determining what

9

deductions were properly allocable under "rules similar to" those rules. I.R.C. § 951A(c)(2)(A)(ii).

Nevertheless, Keysight suggests that there was a different understanding of the term "properly allocable" that Congress intended to incorporate in Section 951A(c)(2)(A)(ii) and that courts have consistently interpreted the term to require a factual relationship test. Dkt. No. 34 at 32. But Keysight's reliance on *International Paper Co. v. United States*, 33 Fed. Cl. 384 (1995), to bolster its rigid "factual relationship test" argument is misplaced. While the Court there applied allocation rules "in a manner consistent with the rules set forth in § 1.861-8," it relied on the parties' stipulated facts in finding that certain expenses were "definitely related" to a particular income category. *Id.* at 400–01. Nothing in *International Paper* suggests that the words "properly allocable" must mean *only* "factually related," and Keysight cites no other case interpreting the term in that manner.

At the same time, Keysight continues to disregard as "*Chevron*-era" the cases that did discuss the meaning of "properly allocable." Dkt. No. 42 at 12. For example, in *Redlark v. Commissioner*, 141 F.3d 936 (9th Cir. 1998), the "dispute center[ed] on the meaning of the words, 'properly allocable.'" *Id.* at 938. The Redlarks argued that the words "properly allocable" "refer only to the 'propriety,' from an accounting standpoint, of 'allocating' personal income tax deficiencies to the conduct of a trade or business" and therefore the statute provided "unambiguously that interest from income tax deficiencies is deductible when the deficiencies in question constitute an ordinary and necessary expense in the relevant trade or business." *Id.* at 939. But the Court agreed with the Commissioner "that the words, 'properly allocable,' are deliberately ambiguous and constitute a delegation of authority to the Commissioner to determine when an expense may 'properly' be 'allocated' to a trade or business and when it may

not." *Id.*; *see also Allen v. United States*, 173 F.3d 533, 535–36 (4th Cir. 1999); *Miller v. United States,* 65 F.3d 687, 690 (8th Cir. 1995); *Robinson v. Comm'r,* 119 T.C. 44, 49 (2002).

*Redlark* is still persuasive precedent. Certainly, *Loper Bright* changed how courts analyze ambiguity in statutes. No longer can the existence of ambiguity be read as an implicit delegation of authority to an agency. *See* 603 U.S. at 400-01. But *Loper Bright* expressly declined to overrule cases that relied on *Chevron*. *See id.* at 412. So *Redlark* remains good law, as it was in 2017 when Congress enacted Section 951A. And so, by using the phrase "properly allocable," in a statute that otherwise delegates authority to the Secretary, Congress intended an effect consistent with *Redlark*'s interpretation of that phrase: one that is not overly prescriptive, but rather permits consideration of a variety of factors in determining its meaning.

Moreover, *Cammarano v. United States*, 358 U.S. 498 (1959), and *Lorillard v. Pons*, 434 U.S. 575 (1978), cited by Keysight (Dkt. No. 34 at 22), support the United States. First, these cases are clear that Congress is presumed to have adopted an administrative or judicial interpretation of a statute only "when it re-enacts a statute *without change*." *Lorrillard*, 434 U.S. at 580 (emphasis added). *See also Cammarano*, 358 U.S. at 510 (applying similar presumption to re-enactment of term "without substantive change"). But here, Congress did not reenact the term "properly allocable" without change. Unlike in Sections 954(b)(5) or 861(b), Section 951A(c)(2)(A)(ii) qualifies "properly allocable" by "under rules *similar to* the rules of section 954(b)(5)," which is a substantive change plainly contemplating departures from the existing rules of Section 954(b)(5). I.R.C. § 951A(c)(2)(A)(ii) (emphasis added). Moreover, Congress recently reenacted Section 951A(c)(2)(A)(ii) without substantive modification. *See* Pub. L. No. 119-21, §§ 70323(a), 70354(b), 139 Stat. 72, 205, 211 (2025) (amending portions of Section

11

951A, but not Section 951A(c)(2)(A)(ii) except to renumber it). By Keysight's own logic, Congress has indicated satisfaction with Treasury's application of the term in the Regulation.

### B.    The Regulation is "similar to the rules of section 954(b)(5)."

As Keysight agrees, Section 954(b)(5) directs Treasury to promulgate rules on what deductions are "properly allocable" to categories of Subpart F income. Dkt. No. 42 at 11. The Section 954(b)(5) rules generally provide that deductions are allocated "under the principles of sections 861, 864, and 904(d)." Treas. Reg. § 1.954-1(c)(1)(i). And as explained above, those rules generally look to "the factual relationship of deductions to gross income." Treas. Reg. § 1.861-8(a)(2). But there are exceptions—and those exceptions also inform what it means for a deduction to be "properly allocable," as well as what rules are "similar to the rules of section 954(b)(5)." I.R.C. § 951A(c)(2)(A)(ii). Congress wrote sufficient flexibility into Section 951A to permit the Secretary to follow *all* the principles in the rules of 954(b)(5) in determining a "proper allocation," and that is what the Secretary did.

#### 1.    *Congress delegated authority to do more than "cut and paste" existing rules into Section 954(b)(5).*

Keysight erroneously claims that Congress intended that Treasury "cut and paste" the Section 954(b)(5) rules into the GILTI regime. Dkt. No. 34 at 24. This is refuted by statutory text and legislative history (*see* Dkt. No. 40 at 33–36, 43–47), and Keysight's factually and legally distinguishable authorities are irrelevant. *Jam v. International Finance Corp.*, 586 U.S. 199 (2019), and the "reference canon" provide Keysight no support. Dkt. No. 34 at 24. In *Jam*, the Court addressed a statute "granting international organizations the 'same immunity' from suit 'as is enjoyed by foreign governments.'" 586 U.S. at 207 (quoting 22 U.S.C. § 288a(b)). The Court found that the statute should be read to incorporate ongoing changes in foreign sovereign immunity law—that was the natural reading of the statute. *Id.* at 207–09. That reading was

12

"confirmed" by the reference canon, which the Court held to incorporate the general body of foreign sovereign immunity law. *Id.* at 209–10. But here, unlike *Jam*, the statute does not say "the same"—it says "similar to." *Compare* 22 U.S.C. § 288a(b), *with* I.R.C. § 951A(c)(2)(A)(ii).

In addition, the canon's application here is irrelevant because there has been no interpretative change that provides Keysight the relief it seeks. The canon concerns whether Section 951A's reference to the "rules of section 954(b)(5)" means the rules as of TCJA's enactment or as they might later be modified. But the language of Section 954(b)(5) has *never* required application of a factual relationship test as Keysight suggests, making the doctrine irrelevant on that point.

### 2. *Allocation of related party interest is not governed by the factual relationship test.*

The United States has never disputed that the factual relationship test is the general test the Secretary has applied for the proper allocation of deductions. But it is not the only one. In 1986, Congress added what are now the second and third sentences of Section 954(b)(5), requiring related-party interest expenses to be allocated first to reduce the CFC's passive income. Tax Reform Act of 1986, § 1201(c), 100 Stat. at 2525. Congress enacted this rule to stop the abuse of a foreign tax credit by U.S. shareholders to reduce or eliminate tax on interest income. *See* H.R. Rep. No. 99-841, vol. II, at 578–79. In other words, Congress recognized that the general factual relationship test was inadequate in the face of a particular taxpayer abuse.

While Congress intervened in this instance to show how a particular type of deduction is properly allocated to prevent abuse, it also preserved the Secretary's "flexibility" to alter the new rule as needed to prevent any "unintended tax advantages" that might result from its application:

> Concern about this effect of the netting rule has led the conferees to provide regulatory flexibility so that the Secretary can apply different rules when the netting rule would allow a tax advantage for offshore passive investments over domestic passive investments, or other unintended tax advantages.

H.R. Rep. No. 99-841, vol. II, at 578. Congress's 1986 revisions to Section 954(b)(5) therefore reflect its views that the "proper" allocation of a deduction incorporates an inquiry into whether the tax effect of an allocation is proper—and that the Secretary is best placed to determine when the effects of an allocation rule are so improper they should be addressed through regulation.

### 3. *Proper allocation of expenses associated with tax-exempt income and assets do not follow the factual relationship test.*

Congress also amended Section 864(e)(3), which is incorporated in "the rules of section 954(b)(5)," to exclude tax-exempt income or assets from being considered when allocating a deduction—another departure from the factual relationship test to address taxpayer abuse. *See* I.R.C. § 864(e)(3); H.R. Rep. No. 99-841, vol. II, at 605. As a result, like deductions for related-party interest, expenses that are factually related to tax-exempt income and assets are not "properly allocable" to such income or assets. As the House Committee on Ways and Means observed: "The committee believes that it is *inappropriate* to consider assets that generate tax-exempt income to be taken into account in allocating deductible expense." H.R. Rep. No. 99-426, at 374 (1985) (emphasis added).

While allocation of expenses attributable to tax-exempt income and assets is not at issue, this exception from the factual relationship test is relevant for determining the scope of Congress's delegation in Section 951A(c)(2)(A)(ii). By cross referencing "rules similar to the rules of section 954(b)(5)," Congress incorporated an expense allocation framework that includes both a factual relationship test and exceptions to that test where its effect would not be proper. The related-party interest and tax-exempt income exceptions depart from the factual relationship

14

test adopted in the Section 954(b)(5) regulations both to address taxpayer abuses and to ensure that these deductions were properly allocated consistently with Congress' objectives. The related-party interest rule allocates interest expense to a passive income category even where portions of that interest expense are factually related to other income categories. *See* I.R.C. § 954(b)(5); Treas. Reg. § 1.954-1(c). The tax-exempt income rule operates in a similar fashion. *See* I.R.C. § 864(e)(3); Treas. Reg. § 1.861-8(d)(2)(ii)(A). These amendments, which have been part of the Section 954(b)(5) rules since 1986, and the rulemaking authority delegated to the Secretary under Section 954(b)(5), show that "properly allocated" deductions need not follow a rigid factual relationship test.

### 4. The Regulation operates in a manner similar to the related-party interest and tax-exempt income rules of Section 954(b)(5).

The Regulation is a narrow anti-abuse rule relevant to only a limited set of transactions. Like the related-party interest and tax-exempt income exceptions to the general rule, it operates to allocate deductions differently than the factual relationship test otherwise applied by the regulations under Section 954(b)(5) and the general GILTI deduction allocation rules in Treas Reg. § 1.951A-2(c)(3)(i).[2] The deductions allocated under the Regulation are attributable to a

---

[2] Keysight claims that the related-party interest and tax-exempt income rules do not in fact deviate from the results under a factual relationship test. Dkt. No. 42 at 16–17. This is incorrect. Imagine a CFC that borrows $100 from a related CFC and uses it to acquire one asset for $50 that generates $10 of gross passive foreign personal holding company income. It also buys for $50 an asset that generates active, general category gross income of $10. The CFC incurs $8 of interest expense with respect to its borrowing in that taxable year. Because the borrowed $100 supported the acquisition of both assets, $4 of the interest expense is factually related to the $10 of gross passive foreign personal holding company income and $4 of the interest expense is factually related to the $10 of active, general category gross income. The related person interest rule, however, will allocate the *entire* $8 to *only* the passive foreign personal holding company income. Therefore, $4 of interest expense ends up allocated to income it was *not* factually related to. A similar example can be shown for the tax-exempt income rule.

15

narrow category of basis, defined as disqualified basis. Treas. Reg. §§ 1.951A-2(c)(5), 1.951A–3(h)(2)(ii) (defining disqualified basis).

Keysight claims that the Regulation improperly requires that certain amortization deductions be allocated to a residual category because the category is neither referenced nor defined in the statute. But this is similar to the allocation rules of Section 954(b)(5) set forth in Treasury Regulation § 1.861-8. These expense allocation rules have employed statutory and residual income categories since inception, notwithstanding that the terms are not found or defined in the statute. Keysight's dislike of the Regulation's allocation of disqualified basis deductions to the residual CFC gross income category is like the complaint in *Redlark*, and resembles complaints about other per se rules.

The Regulation provides that any deductions attributed to disqualified basis are allocated to a residual category of gross income ("residual CFC gross income"). *See* Treas. Reg. § 1.951A-2(c)(5)(i), (c)(5)(iii)(B). In this respect, the Regulation is similar to the related-party interest and tax-exempt income rules. All three rules are fundamentally similar in that they provide for a limited deviation from the general factual relationship test to ensure that deductions are "properly allocated." All three rules employ an objective, not subjective standard. Like the existing related-party and tax-exempt income rules of Section 954(b)(5), the Regulation provides "guidance for determining whether certain deductions or losses are 'properly allocable' to gross tested income, subpart F income, or effectively connected income within the meaning of section 951A(c)(2)(A), section 954(b)(5), or section 882(c)(1)(A), respectively." Guidance Related to Section 951A, 84 Fed. Reg. at 29299. As the Secretary explained in the preamble, the Regulation "is necessary to ensure that transactions during the disqualified period, the income or earnings from which are not subject to tax, are not permitted to *improperly* reduce or eliminate a

16

taxpayer's income that would be subject to tax after the disqualified period." *Id.* (emphasis added). Similar to the related-party interest rule, the Regulation's deviation from the general factual relationship test ensures that deductions are "properly allocated" in a way that prevents U.S. shareholders from using related-party transactions to improperly avoid taxation of their income.

Keysight wants to restrict "the rules of section 954(b)(5)" to the factual relationship test. In doing so, it tries to sweep under the rug the related-party interest and tax-exempt income allocation rules. But these rules are equally part of the rules of Section 954(b)(5). And the Regulation is similar to these rules.

## III.    The Regulation is procedurally valid.

Keysight's final line of attack is that the Regulation is procedurally invalid under the APA. But the Regulation is the product of reasoned decisionmaking, and it logically grew out of the rule the Secretary originally proposed. It should be upheld.

### A.    The Regulation is not arbitrary and capricious.

To determine whether a regulation was the product of reasoned decisionmaking, or was instead arbitrary and capricious, a reviewing court must consider the agency's explanation for its actions and "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Keysight asks the Court to go far beyond the appropriate level of review, but *State Farm* confirms that "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.* Accordingly, courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (internal citation omitted). This is so even where agency rulemaking does not explicitly

17

address every issue that the agency considered. *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375–75 (Fed. Cir. 2009) (reversing trial court for its "impermissible substitution of the court's judgment for the agency's" under the arbitrary and capricious standard and holding that fact that "the issue of aging aircraft was not explicitly addressed" did not mean the agency failed to consider the issue).

Keysight says the rule is arbitrary because Treasury intended for the Regulation to prevent taxpayers from obtaining tax benefits based on "non-economic transactions," but failed to consider that the Regulation might apply to a gap period transaction with "entirely legitimate commercial objectives." Dkt. No. 42 at 33.[3] Keysight further asserts that the Regulation applies to "every transaction between related CFCs during the gap period." Dkt. No. 42 at 33.

Keysight is incorrect and overstates the Regulation's scope. The Regulation applies only to a narrow subset of related-party transactions. In considering and rejecting the addition of a subjective, "non-economic intent" component to the test, the Secretary explained that "these narrowly circumscribed transactions will in almost all cases be motivated by tax avoidance rather than business exigencies." *See* 84 Fed. Reg. at 29300. Given the narrow parameters in which the Regulation can apply—namely, specified related-party transfers during the gap period—the Secretary reasonably determined that an easily applied mechanical rule was appropriate, rather than an administratively difficult intent-based rule. *See, e.g.*, *Balestra v. United States* 803 F.3d 1363, 1373 (Fed. Cir. 2015) (observing that a bright-line rule can reasonably reflect the need for simplicity and administrability).

---

[3] Neither the related-party interest rule nor the tax-exempt income rule try to carve out transactions with "entirely legitimate commercial objectives." Keysight's proposal would make the Regulation less similar to the rules of Section 954(b)(5), not more.

#### B.    The Regulation is a logical outgrowth of the Proposed Rule.

"[A] modified rule may be promulgated as a final rule without additional notice and opportunity for comment, so long as the final rule is a 'logical outgrowth' of the proposed rule." *Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*, 818 F.3d 1336, 1344 (Fed. Cir. 2016). Here, Keysight concedes that "the bottom line" of the Proposed Rule and the Regulation "was the same." Dkt. No. 34 at 19. In other words, Keysight does not dispute that the Proposed Rule and the Regulation have the same effect. Instead, it points to differences in the methodology and legal bases of the Proposed Rule and the Regulation.

Keysight again seeks to impose a stricter standard of review than the one required by the APA. The APA requires only that a notice of proposed rulemaking ("NPRM") include "either the terms *or* substance of the proposed rule *or* a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3) (emphasis added). And as the Federal Circuit has explained, "[t]he logical outgrowth doctrine recognizes that a certain degree of change between an NPRM and a final rule is inherent to the APA's scheme of rulemaking through notice and comment." *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1373 (Fed. Cir. 2017). Keysight's insistence that proposed and final rules must use the exact same methodology is misplaced.

Keysight's own case citations prove the point. In *Veterans Justice Group, LLC v. Secretary of Veterans Affairs*, 818 F.3d 1336 (Fed. Cir. 2016), the Federal Circuit upheld the rule even though the promulgating agency acknowledged that the final rule used "different terminology and structure" than the proposed rule. *Id.* at 1344–45. The Court reasoned that although the mechanism of the final rule differed from that of the proposed rule, the final rule was a logical outgrowth because it "[did] not constitute a change in the basic approach of the Proposed Rule." *Id.* (citing *Griffin Indus., Inc. v. United States*, 27 Fed. Cl. 183, 196 (1992), *aff'd,* 11 F.3d 1072 (Fed. Cir. 1993) (finding that "[t]he approach finally adopted by the IRS,

19

while different from the proposed regulation, was a logical outgrowth of the original proposal")). *Mid Continent Nail Corporation*, in contrast, shows what sort of rulemaking fails the logical outgrowth test. 846 F.3d 1364 (Fed. Cir. 2017). In that case, the request for comment was not published as a notice of proposed rulemaking, did not propose a rule, and did not even cite the regulation that the final rule changed. *Id.* at 1375–76. That is the type of final rule which is disqualified by the logical outgrowth doctrine for having "no roots" in, and being "surprisingly distant" from, the proposed rule. *Id.*

## CONCLUSION

Aware that taxpayers with fiscal-year CFCs might improperly claim tax benefits from untaxed transactions, Congress delegated authority to the Secretary in Section 951A(c)(2)(A)(ii) to issue rules regarding what deductions were "properly allocable" to a CFC's gross tested income. The Secretary acted within the bounds of that authority and engaged in reasoned decisionmaking in promulgating the Regulation. And the Regulation squarely bars the deduction at issue in this suit. As such, the United States is entitled to judgment as a matter of law. The Court should grant summary judgment to the United States.

Dated: February 20, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

*/s/ Jason Bergmann*
JASON BERGMANN
Assistant Director

*/s/ Kari Madrene Larson*
KARI MADRENE LARSON
Senior Litigation Counsel
Tax Litigation Branch
Civil Division, Department of Justice
Post Office Box 26
Washington, DC 20044
202-532-3728 (v)
202-514-9440 (f)
Kari.M.Larson@usdoj.gov

ERIC J. SMITH
Trial Attorney
ELISABETH K. KRYSKA
Trial Attorney
JEREMY A. RILL
Trial Attorney

21